UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| GORDON FAHEY, | ) | CIV. 11-4171-KES |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| TWIN CITY FAN COMPANIES, LTD., d/b/a Twin City Fan Axial Div., | ) | |
| Defendant. | ) | |

Defendant, Twin City Fan Companies, LTD., moves for summary judgment on plaintiff, Gordon Fahey's, claims for failure to accommodate under the Americans with Disabilities Act (ADA) and SDCL 20-13-10. Twin City Fan claims that Fahey is not a qualified individual under the ADA and that even if he is a qualified individual, it engaged in an interactive process to determine whether a reasonable accommodation could be made and found that no such accommodation existed. Fahey disputes these claims and resists the motion. For the following reasons, Twin City Fan's motion is denied.

**BACKGROUND**

The facts viewed in the light most favorable to Fahey, the nonmoving party, are as follows:

Twin City Fan is a manufacturing company with a plant located in Mitchell, South Dakota. Twin City Fan is engaged in the manufacturing of

industrial fans and blowers and has approximately 200 employees at its Mitchell plant.

In October 2010, the South Dakota Department of Labor website indicated that Twin City Fan had several available positions at its Mitchell plant, including a parts expeditor position[1] and several assembler positions. Interested in obtaining employment at Twin City Fan, Fahey filled out an application and submitted it in person on October 21, 2010. Fahey indicated on the application form that he was applying for the position of a "Production Worker."

While submitting his application, Fahey met with LaRue Steffes, Twin City Fan's Human Resources Manager. Fahey and Steffes discussed the various open positions at the plant because Fahey was interested in any day-shift position that was available. Steffes then arranged for Travis Peterson, a production supervisor, to give Fahey a tour of the plant.

While giving Fahey a tour of the plant, Peterson explained the duties of various positions, including the parts expeditor position and the assembler position. Following the tour, Peterson and Fahey returned to Steffes's office where the three of them continued employment discussions. Steffes and

---

[1] The job description of the parts expeditor position describes the essential duties of the position to include, among other things, the operation of a forklift and/or bridge crane. The description states that "[s]pecific vision abilities required by this job include close vision, distance vision, peripheral vision, and depth perception." Docket 26 at ¶ 7.

Twin City Fan requires forklift operators to be certified. To gain certification, an individual must watch a training video, take a written exam, and operate a forklift to the satisfaction of the instructor.

2

Peterson explained that it was company policy to hold positions for a certain amount of time to allow internal employees the opportunity to apply for the positions. It is undisputed that Fahey was offered the parts expeditor position so long as he passed a drug test and physical examination and if no internal employee applied for the position. Fahey also alleges that he was told that he could fill an assembler position in the event that someone internally applied for the parts expeditor position. Twin City Fan disputes this.

When the parts expeditor position was not filled internally, Steffes contacted Fahey on October 22, 2010, to formally offer him the job, conditioned on his passing a drug test and physical examination. Dr. Darla Edinger performed the drug test and physical examination on October 25, 2010. The drug test was negative, and the physical examination showed that Fahey was blind in his right eye.[2] Because Fahey was blind in one eye, Dr. Edinger included in her "Post Offer Physical Summary Report" that "accommodations and/or job training are needed to perform essential job functions." Docket 27-4 at 2. Dr. Edinger further noted that Fahey "has no vision in the right eye and his work station would need to be set up so that he would not be at risk for injury for lack of vision in the right eye." *Id.*

After receiving the physical summary report from Dr. Edinger's office, Steffes determined that Fahey's lack of vision in his right eye would not allow

---

[2] Although Fahey is blind in his right eye, he has a valid South Dakota driver's license.

him to safely perform the functions of the parts expeditor position and also that no accommodations could be made that would allow Fahey to work at Twin City Fan. Steffes then contacted Lyndon Johnson, the plant manager, and discussed the situation with him. The two of them agreed that Fahey could not be accommodated and that his offer should be rescinded. No one from Twin City Fan contacted Fahey or Dr. Edinger at this point in time to gain further knowledge of Fahey's specific limitations with respect to his lack of vision in one eye.

On October 26, 2010, Steffes contacted Fahey to rescind the job offer. Steffes explained to Fahey that his lack of vision in his right eye poses a safety risk and that Twin City Fan could not accommodate him. Fahey disagreed and claimed that his vision did not prevent him from safely performing the duties of a parts expeditor. Steffes told Fahey that she would contact Johnson to see if there was anything that Twin City Fan could do. Steffes then contacted Fahey a final time to inform him that no accommodations could be made.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules[.]" *Celotex Corp.*, 477 U.S. at 327. Because summary judgment is a useful pretrial tool in all civil cases, including ones alleging discrimination, summary judgment motions involving discrimination are treated no differently than summary judgment motions involving "other ultimate questions of fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

**DISCUSSION**

Fahey claims that Twin City Fan violated the ADA[3] by failing to make a reasonable accommodation in its refusal to hire Fahey. Under the ADA and its regulations, discrimination occurs if "a covered entity does not make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (citing 29 C.F.R. 1630.9(a)). Reasonable accommodation claims are evaluated under a modified burden-shifting analysis rather than the traditional *McDonnell Douglas* burden-shifting analysis. *Id.* at 766 (citing *Fenney v. Dakota, Minnesota & Eastern R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003)).

Under the modified burden-shifting analysis, Fahey must first make a facial showing that he has an ADA disability and that he suffered an adverse employment action. *Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008). Fahey must then make a facial showing that he is a "qualified individual." *Id.* To

---

[3] Fahey also alleges a claim under SDCL 20-13-10, a South Dakota statute prohibiting employment discrimination on the basis of disability. This court has previously held that the South Dakota Supreme Court would likely look to federal jurisprudence when interpreting SDCL 20-13-10. *Petersen v. ProxyMed, Inc.*, 617 F. Supp. 2d 835, 845 (D.S.D. 2008) (citing *Huck v. McCain Foods*, 479 N.W.2d 167, 169 (S.D. 1991)). The court is unaware of any recent South Dakota Supreme Court opinion that would run counter to this notion. Moreover, neither party urges the court to draw any distinction between the two claims. Therefore, the court applies the same rationale as it did in *Petersen* and will apply the same analysis to Fahey's ADA and state-law claims.

be a qualified individual, Fahey must "(1) possess the requisite skill, education, experience, and training for [the] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Id.* "In cases where the [applicant] claims that he is able to perform the essential functions of the job with a reasonable accommodation, the [applicant] must only make a facial showing that a reasonable accommodation is possible." *Id.* at 848 (internal quotations omitted). If such a facial showing is made, "the burden then shifts to the employer to show that it is unable to accommodate the [applicant]." *Id.* "If the employer can show that the [applicant] cannot perform the essential functions of the job even with reasonable accommodation, then the [applicant] must rebut that showing with evidence of his individual capabilities." *Fenney*, 327 F.3d at 712.

An employer has no duty to accommodate if the applicant fails to make a request for an accommodation. *Bradley v. Little Rock Wastewater Util.*, No. 12-1405, 2013 WL 535794, at *3 (8th Cir. Feb. 14, 2013) (citing *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002) (holding that an employee must provide his employer with "enough information that, under the circumstances, [the employer] can be fairly said to know that [the employee] sought accommodation for his disability")). But when a disabled applicant requests an accommodation, the employer must engage in an interactive process to determine whether the parties can find and agree upon a reasonable accommodation. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir. 1999). To show that Twin City

Fan failed to participate in the required interactive process, Fahey must demonstrate that: (1) Twin City Fan knew about Fahey's disability; (2) Fahey requested accommodations or assistance for his disability; (3) Twin City Fan did not make a good faith effort to assist Fahey in seeking accommodations; and (4) Fahey could have been reasonably accommodated but for Twin City Fan's lack of good faith. *Ballard*, 284 F.3d at 960 (citing *Fjellestad*, 188 F.3d at 952). Although such a showing does not create per se liability under the ADA, it is prima facie evidence that the employer may be acting in bad faith and is typically enough to avoid summary judgment. *Kallail v. Alliant Energy Corporate Services, Inc.*, 691 F.3d 925, 933 (8th Cir. 2012).

With these principles in mind, the court now turns to Twin City Fan's arguments. Twin City Fan argues that summary judgment should be granted in its favor for two reasons. First, Twin City Fan claims that Fahey is not a qualified individual because he cannot perform the essential functions of the job with or without an accommodation. Second, Twin City Fan claims that after it engaged in an interactive process to determine if a reasonable accommodation could be made, it concluded that no such accommodation existed.

### I.  **Qualified Individual**

To be a qualified individual, Fahey must "(1) possess the requisite skill, education, experience, and training for [the] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Brannon*, 521 F.3d at 848. For purposes of its motion for summary judgment,

8

Twin City Fan does not dispute that Fahey possesses the requisite skill, education, experience, and training for the position.[4] Rather, Twin City Fan claims that Fahey is unable to perform the essential job functions with or without an accommodation.

This case is unique because Fahey claims that he applied for two different positions—parts expeditor and assembler—and was told that he would be able to fill either role so long as it remained open following a required internal posting period. Twin City Fan alleges that only the parts expeditor position was available at the time Fahey applied for employment. This is a factual dispute that the court addresses below in detail. The court begins its analysis, however, by examining whether Fahey is a qualified individual with respect to the parts expeditor position.

Twin City Fan argues that Fahey is not a qualified individual for the parts expeditor position because the lack of vision in his right eye impairs his ability to safely perform the essential functions of the position, specifically the function of operating a forklift. Fahey disagrees and asserts that he is able to safely operate a forklift or, in the alternative, that a reasonable accommodation can be made which would allow him to perform the essential functions of the position.

Fahey has the ultimate burden of persuading the trier of fact that he can perform the essential functions of the position. *Kallail*, 691 F.3d at 930. But to

---

[4] Similarly, Twin City Fan does not dispute, for purposes of its summary judgment motion, that Fahey is disabled under the ADA or that its decision not to hire him was an adverse employment action.

survive summary judgment, Fahey only needs to demonstrate the existence of disputed facts that are outcome determinative. *Mosley*, 415 F.3d at 910-11.

Fahey claims that his vision would not affect his operation of a forklift. He believes that "plant accidents are caused by carelessness" and that he is "more cautious than the average person," especially because of the lack of vision in his right eye. Docket 32 at ¶ 10. Fahey points out that he has a valid drivers license. Fahey also directs the court to the fact that the physical summary report prepared by Dr. Edinger—the report that Twin City Fan relied on in making its determination to rescind the job offer—does not say his vision would interfere with performing the essential functions of the job; instead, the report merely states that he has no vision in his right eye and certain accommodations are needed. Docket 27-4 at 2. The physical summary report is also silent as to how Fahey's lack of vision in his right eye affects his overall vision. The report gives no indication as to the quality of Fahey's close vision, distance vision, peripheral vision, or depth perception, which are the physical requirements listed in Twin City Fan's job description of the parts expeditor position. Finally, Fahey notes that Twin City Fan requires forklift operators to be certified. As part of the certification, Twin City Fan requires the applicant to actually operate a forklift at the direction of an instructor to ensure the applicant can properly operate a forklift. Thus, Fahey suggests that Twin City Fan could have at least allowed him to attempt to operate a forklift before forming the conclusion that he was unable to do so. For all of these reasons, Fahey argues that there is a

factual dispute as to whether he can operate a forklift and, thus, whether he can perform the essential functions of the parts expeditor position.

Twin City Fan argues that Dr. Edinger's physical summary report combined with its own judgment and knowledge of operating a forklift at its facility is enough for this court to find, as a matter of law, that Fahey is not a qualified individual for the parts expeditor position. In making its argument, Twin City Fan asserts that the parts expeditor position requires greater vision abilities than other positions. Twin City Fan also relies on additional deposition testimony from Dr. Edinger in which she provides an after-the-fact explanation of her physical summary report.

Based on the record before the court, the court cannot conclude as a matter of law that Fahey is not a qualified individual with respect to the parts expeditor position. In support of its argument that Fahey is not a qualified individual, Twin City Fan directs the court to *Courtney v. Am. Nat'l Can Co.*, 537 N.W.2d 681 (Iowa 1995). In *Courtney*, the Iowa Supreme Court affirmed the trial court's determination that an individual who suffered from blindness in one eye was not qualified to work in a position in which the operation of a forklift was an essential function of the position. *Id.* at 686. *Courtney* is distinguishable from the situation here. As the Iowa Supreme Court noted, the trial court's determination was a *factual finding* that was made following a bench trial. *Id.* at 685-86. Moreover, the trial court's factual finding was made only after an extensive "individualized inquiry" in which both parties presented a substantial

amount of evidence about the employee's specific medical condition and limitations as well as about the working environment at the employer's facility. *Id.* Here, it would be improper for the court to make a similar factual finding when ruling on a motion for summary judgment, especially when Twin City Fan has not directed the court to specific facts that would allow for the type of individualized inquiry made in *Courtney*. *See Torgerson*, 643 F.3d at 1042 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Therefore, because Fahey has shown that the issue of whether he is capable of safely operating a forklift at the Twin City Fan facility is legitimately in dispute, summary judgment is denied.[5]

Because Fahey has demonstrated that a genuine issue for trial exists on the issue of whether he is qualified to perform the parts expeditor position even without an accommodation, summary judgment is denied, and the court could end its analysis here. Nevertheless, the court will also address Twin City Fan's alternative argument.

---

[5] Fahey also asserts that he is qualified to work as an assembler at Twin City Fan, and Twin City Fan could have, as a reasonable accommodation, placed him in such a position. Twin City Fan is silent on the issue of whether Fahey is a qualified individual with respect to the assembler position. Thus, the court assumes, for purposes of Twin City Fan's motion for summary judgment, that Fahey is a qualified individual with respect to the assembler position.

## II. Reasonable Accommodation

Twin City Fan also argues that summary judgment should be granted in its favor because it engaged in an interactive process to determine if a reasonable accommodation could be made and concluded that no such accommodation existed. Fahey disagrees. To show that Twin City Fan failed to participate in the required interactive process, Fahey must demonstrate that: (1) Twin City Fan knew about Fahey's disability; (2) Fahey requested accommodations or assistance for his disability; (3) Twin City Fan did not make a good faith effort to assist Fahey in seeking accommodations; and (4) Fahey could have been reasonably accommodated but for Twin City Fan's lack of good faith. *Ballard*, 284 F.3d at 960. The parties do not dispute that Twin City Fan knew about Fahey's blindness and instead dispute the other required showings.

### A. Request for Accommodation—Notice Requirement

Twin City Fan claims that Fahey never requested an accommodation. A request for an accommodation can be made either expressly or implicitly. *See Ballard*, 284 F.3d at 964 (suggesting that either a "formal or *de facto* request for accommodation" could put an employer on notice of employee's desire for accommodation). Moreover, in cases like this one—where the employer either refuses to hire an applicant or rescinds a previously made offer—the time frame that an applicant has to request an accommodation can be very small. It stands to reason that a job applicant must be given the opportunity to request an accommodation, especially if the employer is aware of the disability; otherwise,

an employer with discriminatory motives could avoid liability simply by acting quickly. *See Barnes v. Northwest Iowa Health Ctr.*, 238 F. Supp. 2d 1053, 1087 n.13 (N.D. Iowa 2002) ("Because [employer] had rescinded [applicant's] offer of employment before giving her any opportunity to request accommodation, a finding that [applicant's] claim fails because she did not request accommodation would result in the bizarre outcome that if an employer acts quickly enough, its discriminatory animus may be immune from liability under the ADA.").

Here, Fahey was never given a legitimate opportunity to request an accommodation. As Twin City Fan states in its brief, Steffes called Fahey on October 26, 2010, to inform Fahey that "due to Fahey's lack of vision in his right eye, he would pose a safety risk both to himself and others and that Twin City Fan could not accommodate him." Docket 36 at 11. Prior to Steffes's phone call, Fahey was under the belief that he was going to begin employment with Twin City Fan without issue and, thus, had no reason to request any type of accommodation.

Additionally, the court finds that it was unnecessary for Fahey to request an accommodation after Twin City Fan informed him of its rescission of his offer. First, because Twin City Fan had already expressed to Fahey that it could not accommodate him, "a reasonable fact-finder could conclude that it would have been fruitless to request accommodation" at that point in time. *Barnes*, 238 F. Supp. 2d at 1087. Second, the purpose of the notice requirement is to ensure that the employer is aware that the employee wants an accommodation.

14

The effect of the notice requirement is that it shields an employer from failure-to-accommodate liability when it was unaware that the employee wanted an accommodation in the first place. Here, by asserting that it engaged in an interactive process to determine if an accommodation was possible, Twin City Fan implicitly admits that it was aware that, at the very least, a potential accommodation request existed. It is nonsensical for Twin City Fan to assert that it engaged in an interactive process to determine whether a reasonable accommodation existed—implying that it was aware that an accommodation may be necessary—while at the same time seeking the shelter of a requirement that is intended to protect the unaware.[6] Therefore, the court finds that Twin City Fan's "unilateral decision that accommodation was unduly burdensome circumvented the purpose of the ADA's interactive dialogue requirement, and [Twin City Fan] cannot escape any potential liability merely because it cut the typical sequence of events off at the pass, thus precluding [Fahey] from requesting accommodation and initiating the interactive process." *Barnes*, 238 F. Supp. 2d at 1088.

---

[6] This is not to say that an employer automatically gives up a "notice" argument when it argues that it engaged in an interactive process. For example, if an employer attempts to engage in an interactive process but the disabled employee persistently asserts that no accommodation is necessary, then it may be the case that both defenses would be available to the employer. But there is no indication that those are the facts here. Rather, it seems that Twin City Fan is attempting to defeat Fahey's claim by applying a technicality that would be inappropriate to apply under these facts.

**B. Good Faith Effort**

Fahey must also bring forth evidence to show that Twin City Fan did not make a good faith effort to assist him in seeking accommodation. After reviewing the record, the court finds that Fahey has satisfied his burden of showing that a genuine issue for trial exists. First, Twin City Fan did not engage in any sort of interactive process. Instead, Twin City Fan contacted Fahey and informed him that the job offer was rescinded and unilaterally decided that no accommodation could be made. Second, Twin City Fan had limited knowledge of Fahey's specific limitations. The only knowledge of Fahey's limitations that Twin City Fan had at the time it rescinded the offer and concluded that no accommodation could be made came from the physical summary report produced by Dr. Edinger. That report only stated that accommodations were needed: "He has no vision in the right eye and his work station would need to be set up so that he would not be at risk for injury for lack of vision in the right eye." Docket 27-4 at 2. Twin City Fan did not reach out to either Fahey or Dr. Edinger to learn more about Fahey's specific limitations and how those limitations would affect his ability to perform the essential functions of the position.

In attempting to argue that it made a good faith effort to assist Fahey, Twin City Fan notes that Steffes contacted her supervisors and Johnson, the plant manager, to determine whether any accommodation could be made for Fahey's vision. Following these discussions, Steffes concluded that no accommodation could be made and that Fahey's vision necessitated a rescission

of the job offer. But the problem with Twin City Fan's argument lies in the fact that Twin City Fan did not include Fahey in any of these conversations. Aside from Dr. Edinger's brief physical summary report, Twin City Fan was utterly ignorant of Fahey's specific limitations and what effect those limitations would have on his ability to perform work functions. Any internal discussions about possible accommodations would have necessarily relied on unfounded assumptions and stereotypes. This type of one-sided decision-making is what the ADA seeks to avoid by requiring that the employer engage in an interactive process that involves both the employer and applicant once the employer is aware that an accommodation is, or may be, wanted. *See Fjellestad*, 188 F.3d at 951 ("The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [applicant] with a disability.") (citing 29 C.F.R. § 1630, App.). Thus, the court finds that Fahey has brought forth sufficient evidence to show that a genuine issue of disputed material fact exists for trial on whether Twin City Fan made a good faith effort to assist him in seeking accommodation.

### C. Existence of Reasonable Accommodation

Finally, Fahey must show that he could have been reasonably accommodated but for Twin City Fan's lack of good faith. As discussed above, Fahey has already demonstrated that a genuine issue for trial exists on whether he can perform the essential functions of the job even without accommodation.

The court will nonetheless assess whether a triable issue exists on the issue of whether reasonable accommodations exist.

In his brief, Fahey suggests that Twin City Fan could have placed him in an assembler position, as a reasonable accommodation, in the event that he is unable to operate a forklift himself. Twin City Fan does not dispute that placing an applicant in a vacant position that he is qualified for is a possible accommodation under the ADA. Twin City Fan asserts, however, that no assembler position was vacant. *See Fjellestad*, 188 F.3d at 950 (noting that creating a brand new position is not a reasonable accommodation but that "reassignment to a vacant position is a possible accommodation under the ADA"). Fahey, on the other hand, alleges that not only was there a vacant assembler position at the time, but that Twin City Fan originally offered him the assembler position in the event that the parts expeditor position was filled internally.

The issue of whether there was a vacant assembler position is a disputed factual issue that may affect the outcome of this case. The parties stand firm in their respective positions, and the evidence on the record does not conclusively determine which party is correct. It is undisputed that the Department of Labor website indicated that eight assembler positions were open. Docket 26 at ¶ 5. Twin City Fan retorts by claiming that the website was inaccurate because it had not been updated. Moreover, Fahey's employment application shows that the position he applied for was a "Production Worker," not specifically a parts

expeditor or assembler. Based on the record as a whole, the court finds that Fahey has put forth enough facts to show that there is a legitimate factual dispute on this issue.

In sum, Fahey has shown that a genuine issue for trial exists on whether Twin City Fan failed to participate in the required interactive process. Thus, summary judgment is denied for this reason as well.

### III. Punitive Damages

As a final matter, Twin City Fan also moves for summary judgment on the issue of punitive damages. "A plaintiff is entitled to punitive damages in connection with ADA claims where the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1096 (8th Cir. 2007) (internal quotations omitted). "An employer acts with malice or with reckless indifference if it has knowledge that it may be acting in violation of federal law." *Id.* (internal quotations omitted). As noted above, an employer's failure to engage in an interactive process is prima facie evidence that the employer may be acting in bad faith. Fahey has already demonstrated that a triable issue exists as to whether Twin City Fan failed to engage in an interactive process, thus implying bad faith. Furthermore, Fahey put forth evidence that Steffes, who ultimately rescinded the offer because of Fahey's vision, was aware of disability discrimination laws and presumably knew that disability discrimination was illegal. Because Fahey

has identified evidence of Twin City Fan's bad faith and knowledge of the law, a jury could further infer that Twin City Fan had knowledge that it was violating federal law. The court will therefore leave the issue of punitive damages to the jury. *See, e.g., Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 991-92 (8th Cir. 2007) (finding that submitting the issue of punitive damages to the jury was appropriate).

## CONCLUSION

Fahey demonstrated that a genuine issue for trial exists on the issues of whether he is a qualified individual with respect to the parts expeditor position and whether Twin City Fan failed to participate in the ADA's required interactive process. Accordingly, it is

ORDERED that defendant Twin City Fan's motion for summary judgment (Docket 22) is denied.

Dated July 10, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE