UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GORDON FAHEY, | ) | CIV. 11-4171-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| TWIN CITY FAN COMPANIES, LTD., | ) | |
| d/b/a Twin City Fan Axial Div., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Gordon Fahey, brought suit against defendant, Twin City Fan
Companies, LTD., alleging violations of the Americans with Disabilities Act
(ADA) and SDCL 20-13-10. A court trial was held October 30-31, 2013. The
court has considered the testimony, exhibits, and closing arguments in
determining the outcome of this case.

**FINDINGS OF FACT**

The following constitutes the court's findings of fact pursuant to Federal
Rule of Civil Procedure 52(a)(1), which were found by a preponderance of the
evidence:

Twin City Fan is a manufacturing company with a plant located in
Mitchell, South Dakota. Twin City Fan is engaged in the manufacturing of
industrial fans and blowers and has approximately 200 employees at its Mitchell
plant.

In October 2010, the South Dakota Department of Labor website
indicated that Twin City Fan had several open production worker positions at its

Mitchell plant, including a parts expediter position[1] and several assembler positions. Interested in obtaining employment at Twin City Fan, Gordon Fahey[2] filled out an application and submitted it in person. Fahey indicated on the application form that he was applying for the position of a "Production Worker."

While submitting his application, Fahey met with LaRue Steffes, Twin City Fan's Human Resources Manager. Fahey and Steffes briefly discussed Fahey's background and the open positions at the plant. Fahey was interested in any full-time day-shift position that was available. Steffes then arranged for Travis Peterson, a production supervisor, to give Fahey a tour of the plant.

While giving Fahey a tour of the plant, Peterson explained the duties of various positions, including the parts expediter position. Following the tour, Peterson and Fahey returned to Steffes's office where the three of them continued employment discussions. Steffes and Peterson decided Fahey was

---

[1] The job description of the parts expediter position describes the essential duties of the position to include, among other things, the operation of a forklift. The description states that "[s]pecific vision abilities required by this job include close vision, distance vision, peripheral vision, and depth perception." Exhibit 5. Travis Peterson estimated that 25 percent of the parts expediter's duties require operation of a forklift.

Twin City Fan requires forklift operators to be certified. To gain certification, an individual must watch a training video, take a written exam, and operate a forklift to the satisfaction of the instructor. Twin City Fan certifies employees after they are hired.

[2] Fahey has a high school diploma and a bachelor's degree. He was enlisted in the United State Navy for four years before being honorably discharged. He previously worked as a laborer on an assembly line, a juvenile detention counselor, and a residential living supervisor at a vocational training business. He also has experience operating a forklift.

best suited for the parts expediter position that was expected to be coming open soon. They explained that it was company policy to hold positions open for a certain amount of time to allow current employees the opportunity to apply for the positions internally. If no current employees applied internally for the parts expediter position, it was understood that the position would be offered to Fahey.

The parts expediter position was not filled internally. Steffes contacted Fahey on October 22, 2010, to formally offer him the job, conditioned on his passing a drug test and physical examination.

Dr. Darla Edinger performed the drug test and physical examination on October 25, 2010. The drug test was negative, and the physical examination showed that Fahey was blind in his right eye.[3] Because Fahey was blind in one eye, Dr. Edinger included in her "Post Offer Physical Summary Report" that "accommodations and/or job training are needed to perform essential job functions." Exhibit 7. Dr. Edinger further noted that Fahey "has no vision in the right eye and his work station would need to be set up so that he would not be at risk for injury for lack of vision in the right eye." *Id.* The report also indicated

---

[3] Fahey developed glaucoma and lost vision in his right eye in 2007. Limited peripheral vision is a natural consequence of having monovular vision. Fahey has had to make adjustments following the onset of his blindness. For example, he uses lateral head movements to compensate for his limited peripheral vision. He has become more cautious as well, taking more time when approaching intersections. Some aspects of his life have not changed, however. For instance, he plays basketball, shoots pool, and plays catch. He has a valid South Dakota driver's license and can parallel park, but he is required to have a side mirror on any car he drives.

that Fahey had a "history of DJD in the spine and migratory arthritis that would be considered preexisting and not work related." *Id.*

After receiving the physical summary report from Dr. Edinger's office, Steffes determined that Fahey's monocular vision would not allow him to safely perform the functions of the parts expediter position, namely operating a forklift, and also that no accommodations could be made that would allow Fahey to work at Twin City Fan. Steffes contacted Lyndon Johnson, the plant manager, and Jeff Tally, her supervisor, and discussed the situation with them. The three agreed with Steffes's decision that Fahey could not be accommodated and that his offer should be rescinded. No one from Twin City Fan contacted Fahey or Dr. Edinger to gain further knowledge of Fahey's specific limitations.

On October 26, 2010, Steffes contacted Fahey to rescind the job offer. Steffes explained to Fahey that his lack of vision in his right eye poses a safety risk and that Twin City Fan could not accommodate him. Fahey disagreed and claimed that his vision did not prevent him from safely performing the duties of the parts expediter position. Fahey asked Twin City Fan to reconsider. Steffes told Fahey that she would contact Johnson to see if there was anything that Twin City Fan could do. Steffes and Johnson maintained their position that Fahey was a safety risk and could not be accommodated. Steffes then contacted Fahey a final time and informed him that no accommodations could be made and that his offer was rescinded.

Although it is Twin City Fan's standard practice to keep employment applications for one year when it is unable to immediately place a qualified applicant in an available position, it chose not to do so for Fahey. Twin City Fan keeps applications because positions become available quickly as a result of the plant's high turnover rate, which is somewhere between 47 and 50 percent per year. The assembler positions have particularly high turnover rates. For example, at the time of trial there were four open day-shift assembler positions. When a position becomes available, Twin City Fan notifies the qualified applicants who are on file.

Fahey ultimately gained full-time employment at LifeQuest and part-time employment at Riverfront Broadcasting.

## LEGAL CONCLUSIONS

Two types of claims exist under the ADA:[4] claims for disparate treatment and claims for failing to provide reasonable accommodation. Fahey seeks relief under each.

---

[4] Fahey also alleges a claim under SDCL 20-13-10, a South Dakota statute prohibiting employment discrimination on the basis of disability. This court has previously held that the South Dakota Supreme Court would likely look to federal jurisprudence when interpreting SDCL 20-13-10. *Petersen v. ProxyMed, Inc.*, 617 F. Supp. 2d 835, 845 (D.S.D. 2008) (citing *Huck v. McCain Foods*, 479 N.W.2d 167, 169 (S.D. 1991)). The court is unaware of any recent South Dakota Supreme Court opinion that would run counter to this notion. Moreover, neither party urges the court to draw any distinction between the two claims. Therefore, the court applies the same rationale as it did in *Petersen* and will apply the same analysis to Fahey's ADA and state-law claims.

## I.      Disparate Treatment

The ADA prohibits employers from discriminating against qualified individuals on the basis of a disability when hiring employees. 42 U.S.C. § 12112(a). To succeed on his disparate treatment claim, Fahey must show: (1) that he was a disabled person within the meaning of the ADA, (2) that he was qualified to perform the essential functions of the job, (3) that he suffered an adverse employment action, and (4) that his disability was a motivating factor for the adverse employment action. *See* Eighth Circuit Manual of Model Jury Instructions–Civil, Instruction 9.40 (2013); 42 U.S.C. § 12112(a); *Duello v. Buchanan Cnty. Bd. of Supervisors*, 628 F.3d 968, 972 (8th Cir. 2010) ("A plaintiff seeking to recover under the ADA must establish a prima facie case of discrimination, that is: 'a disability within the meaning of the ADA; qualifications to perform the essential functions of the job, with or without reasonable accommodation; and an adverse employment action due to a disability.' ").

### A.  Disabled under the ADA

Fahey must first show he was a disabled person within the meaning of the ADA. A disability under the ADA is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). Seeing is a major life activity. 42 U.S.C. § 12101(2)(A). Fahey has been blind in his right eye since 2007. Not only can Fahey not see out of his right eye, but his monocular vision also limits his peripheral vision. His blindness in his right eye,

therefore, is a physical impairment that substantially limits[5] his ability to see. Thus, the court finds Fahey is a disabled person within the meaning of the ADA.

### B. Qualified Individual

Fahey must next show he was qualified to perform the essential functions of the position. To be qualified, Fahey must (1) have the requisite skill, experience, education, and training, and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010).

The circumstances of this case present a unique situation. On his job application, Fahey applied for the position of a production worker.[6] Twin City Fan does not have a general "production worker" position. Steffes, after reviewing Fahey's application, understood it to mean that Fahey was seeking any position involved in the production process. This was in fact the case; Fahey was interested in any available full-time position. After their brief discussion and a tour of the plant with Peterson, Steffes decided Fahey would be best utilized as a parts expediter, and an offer was extended conditioned on Fahey

---

[5] "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures[.]" 42 U.S.C. § 12102(4)(E). Moreover, the "definition of disability . . . shall be construed in favor of broad coverage of individuals . . ., to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A).

[6] The South Dakota Department of Labor website indicated that Twin City Fan was seeking "Production Workers." Fahey applied to Twin City Fan after seeing this job post.

passing a physical exam and drug test. Therefore, the court first addresses whether Fahey was a qualified individual with respect to the parts expediter position.

The requisite skill, education, experience, and training required for the parts expediter position were laid out in Twin City Fan's job description. An applicant should posses a high school diploma or GED and have six to twelve months related experience or training. He must have the ability to read and interpret documents such as safety rules, operating and maintenance instructions, and procedural manuals, to communicate verbally in a productive manner, to add, subtract, multiply, and divide in all units of measure, to apply common sense to carry out instructions, to deal with problems involving several concrete variables, to judge the difference in measurements, and to use tools in a safe and proper manner. He must also get certified to operate a forklift and bridge crane; Twin City Fan provides these certifications after an applicant is hired.

Fahey has a high school diploma and a bachelor's degree. He was enlisted in the United State Navy for four years before being honorably discharged. He also had experience working as a laborer on an assembly line, working as a juvenile detention counselor, and working as a residential living supervisor at a vocational training business. Moreover, Twin City Fan extended an offer to Fahey for the parts expediter position conditioned on his passing a physical exam and drug test, which shows Twin City Fan considered him qualified for the

position. Based on his education, experience, and Twin City Fan's conditional job offer, the court finds Fahey possessed the requisite skill, education, experience, and training for the parts expediter position.

The next issue is whether Fahey could perform the essential job functions, with or without reasonable accommodation, of the parts expediter position.[7] The essential job functions at issue here are operating a forklift[8] and safely maneuvering around the plant.

Fahey proved he is capable of safely maneuvering around the plant. He lost vision in his right eye in 2007 and, thus, had roughly three years of experience "maneuvering" on a daily basis. He plays basketball, shoots pool, can parallel park, and plays catch. He has 20/30 vision in his left eye. Fahey also described two compensation strategies that he has made part of his standard practice since losing sight in his right eye. First, he uses lateral head movements to alleviate issues caused by his limited peripheral vision. Second, he is extra cautious when in tight, busy environments. For example, he stated

_____

[7] The burden is on Fahey to show he was qualified to perform the essential job functions. *See Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) ("The plaintiff must initially establish each element of the prima facie case.").

[8] Twin City Fan's job description of the parts expediter position states that forklift certification is required. Peterson testified that operating a forklift is essential to the position because the parts expediter is often required to move very heavy objects. In fact, roughly 25 percent of the duties of a parts expediter involves operation of a forklift. Operating a forklift is therefore an essential job function. And naturally, being able to maneuver around the plant is an essential function of the job.

that he often stops when he approaches intersecting hallways and doorways to ensure no one is coming. In sum, Fahey proved he is capable of maneuvering around the plant.

Fahey also proved he is capable of operating a forklift. He has a valid driver's license, can parallel park, and has operated a forklift in the past. Moreover, Twin City Fan trains employees to use the forklift and actually certifies them to do so. The certification process requires the individual to watch a training video, take a written exam, and operate a forklift to the satisfaction of the instructor. Based on these facts, Fahey proved he is capable of operating a forklift.

Twin City Fan asserted the direct threat defense, arguing Fahey's monocular vision poses a direct threat to the health and safety of others in the plant as well as to Fahey himself if he were to operate a forklift at the plant. "[A]n individual may not be qualified for a position if that individual poses a 'direct threat' to the health or safety of others[.]" *Burroughs v. City of Springfield*, 163 F.3d 505, 508 (8th Cir. 1998) (citing 42 U.S.C. § 12113(b)). A direct threat is a significant risk to the health or safety of others or one's self that cannot be eliminated by reasonable accommodation. 42 U.S.C. § 12111(3); *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73 (2002). When it comes to whether Fahey posed a direct threat, Twin City Fan "bears the burden of proof, as the direct threat defense is an affirmative defense." *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007).

In determining whether Fahey posed a direct threat, Twin City Fan was required to undertake an individualized analysis that relied "on the best current medical or other objective evidence in order to protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear." *Wal-Mart Stores, Inc.*, 477 F.3d at 571 (internal quotations omitted). An employer's subjective, good faith belief that an applicant will pose a threat will not relieve the employer from liability. *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). "Specific factors to be considered include (1) the duration of risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm." *Id.*

During the trial, Twin City Fan relied heavily on deposition testimony from Dr. Edinger to establish Fahey posed a direct threat. The deposition of Dr. Edinger, however, was taken after the decision to rescind Fahey's job offer and her testimony was not available to Twin City Fan at the time it made its employment decision. It is therefore inappropriate to consider Dr. Edinger's after-the-fact opinions about any threats posed by Fahey when deciding whether Twin City Fan met its obligation to undertake an individualized inquiry that relied on the best current medical or other objective evidence. *See Bragdon*, 524 U.S. at 649-55 (requiring the direct threat inquiry to take place before the alleged discriminatory act and, therefore, did not give weight to evidence that came to light after the fact); *Burroughs*, 163 F.3d at 508 ("The City's decision to remove Burroughs from duty was appropriately based on objective evidence and

reasonable medical judgment."); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999) (finding that the direct threat analysis "necessarily requires the employer to gather substantial information about the employee's work history and medical status, and disallows reliance on subjective evaluations by the employer") (internal quotations omitted). As a result, the court will only consider the information Twin City Fan had available to it at the time it rescinded Fahey's job offer.[9]

Steffes testified regarding the basis for Twin City Fan's decision to rescind Fahey's job offer. The discussion as to whether Fahey could safely perform the parts expediter position started when Steffes received the post-offer physical summary report from Dr. Edinger. In her report, Dr. Edinger indicated that Fahey would need accommodations and/or job training to perform essential job functions. Dr. Edinger specifically wrote that Fahey "must wear safety glasses to protect vision. He has no vision in the right eye and his work station would need to be set up so that he would not be at risk for injury for lack of vision in the right eye." Exhibit 7. Steffes discussed the report and safety implications therefrom with Jeff Tally and Lyndon Johnson. After these discussions, Steffes

---

[9] Dr. Edinger's after-the-fact deposition testimony would be relevant in determining the objective reasonableness of Twin City Fan's decision, if necessary. Whether Twin City Fan's decision was objectively reasonable is different from the issue of whether Twin City Fan met its obligations under the ADA by performing an individualized inquiry to determine, before making its ultimate employment decision, whether Fahey posed a direct threat.

decided Fahey could not safely work in the parts expediter position because he would be unable to operate a forklift in the fast-paced environment.

Steffes then called Fahey to rescind the job offer. Fahey disagreed with Steffes's decision that he could not safely perform the job and attempted to convince her that he could. Steffes said Twin City Fan would reconsider its position. Following her phone conversation with Fahey, Steffes again reached out to Johnson. Steffes and Johnson agreed that Fahey could not safely perform the essential job functions. Steffes called Fahey a second time and told him that Twin City Fan's position had not changed and that the offer was rescinded.

The court finds Twin City Fan fell short in meeting its obligations under the ADA. Before rescinding its job offer because of an alleged safety issue that stemmed from Fahey's disability, Twin City Fan was required to undertake an individualized analysis that relied on medical or other objective evidence. The only medical evidence Twin City Fan considered was Dr. Edinger's report. The report stated that Fahey is blind in his right eye and that accommodations were needed. Twin City Fan did not contact Dr. Edinger to have her further explain the comments made in her report. For example, it would have been appropriate for Twin City Fan to learn what specific limitations—particularly with respect to the parts expediter position—Fahey's monocular vision created. Indeed, Steffes admitted that she has never spoken to a doctor or read any literature regarding the limitations monocular vision imposes on the operation of a forklift. Furthermore, Twin City Fan did not contact Fahey to inquire more into his

disability and the specific limitations caused therefrom.[10] The only information Twin City Fan had at the time it made its decision to rescind the offer was the fact that Fahey was blind in his right eye. Because of its failure to make the requisite individualized inquiry, Twin City Fan's ultimate decision to rescind the offer could have only been based on prejudices, stereotypes, or unfounded generalizations.

Moreover, Twin City Fan also bears the burden to show that any alleged direct threat could not be eliminated by reasonable accommodation. 42 U.S.C. § 12111(3). Steffes admitted that she did not discuss the possibility of modifying the parts expediter position with anyone. It is unclear whether any discussions regarding possible accommodations took place prior to rescinding the offer. As an example of an accommodation, Fahey proposes that a side mirror could be placed on the forklift to help alleviate any issues caused by his limited peripheral vision. There is no evidence Twin City Fan considered this option. Steffes testified that she made the decision Fahey could not be accommodated, but she did not identify any specific accommodations that she or others considered. Twin City Fan failed to prove that Fahey was a direct threat or that, if he was a direct threat, such threat could not be eliminated by reasonable accommodation.

---

[10] The record clearly shows Twin City Fan failed to participate in any type of interactive process to determine if Fahey could be accommodated. Fahey was never included in any conversations about possible accommodations. Instead, Twin City Fan made a one-sided determination that no accommodation was possible, and it did not even identify what accommodations were considered.

Twin City Fan did not meet its burden in showing Fahey posed a direct threat to the health and safety of others and himself. Twin City Fan failed to meet its obligation under the ADA to undertake an individualized inquiry prior to making its employment decision and also failed to consider possible accommodations that could eliminate any possible threats. The "direct threat" affirmative defense is therefore not applicable, and Fahey proved he was a qualified individual to perform the essential functions of the parts expediter position under the ADA.

There is also an issue as to whether Fahey was a qualified individual with respect to the assembler position. The assembler position does not require any skill, experience, education, or training above and beyond what is required for the parts expediter position. Therefore, Fahey possessed the requisite skill, education, experience, and training for the assembler position.

Fahey is also required to show he could perform the essential job functions of the assembler position, with or without reasonable accommodation. Twin City Fan does not claim Fahey's monocular vision impairs his ability to perform the essential job functions. Rather, Twin City Fan contends Fahey's arthritis and degenerative joint disease in his spine make him unqualified to perform the essential job functions, namely because of the repetitive movements, standing, and stretching required of the assembler position.

Dr. Edinger was aware of these ailments as she indicated them on Fahey's post-offer physical summary report. Dr. Edinger did not, however, say that

Fahey was unable to perform any position at Twin City Fan because of his arthritis or joint disease. Her specific words were, "He does have a history of DJD in the spine and migratory arthritis that would be considered preexisting and not work related." Exhibit 7. Following her physical examination of Fahey, Dr. Edinger did not indicate Fahey would be unable to perform the functions of the assembler position.

Moreover, Fahey testified extensively about his physical abilities. Although his arthritis caused flair ups and he would get headaches, he showed by a preponderance of the evidence that he would be able to perform the duties required of the assembler position. Based on the evidence presented at trial, the court finds Fahey was also able to perform the essential functions of the assembler position.

### C. Adverse Employment Action

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures [and] hiring[.]" 42 U.S.C. § 12112(a). Twin City Fan rescinded Fahey's job offer for the parts expediter position after it learned of his blindness in his right eye. Rescinding a job offer is an adverse employment action under the ADA.

There is a separate adverse employment action related to the assembler position. Fahey applied for any full-time production worker position. Twin City Fan made the determination that Fahey would be best utilized in the parts expediter position. Fahey now argues that, even if he was not a qualified

individual with respect to the parts expediter position, Twin City Fan could have placed him in an assembler position. Twin City Fan disagrees because there was not an available assembler position at the time Fahey turned in his application.

Twin City Fan directs the court to case law pertaining to reasonable accommodation claims. For example, an employer is not required to create a new position or to "bump" another employee in order to accommodate a disabled person. *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1019 (8th Cir. 2000). Moreover, Twin City Fan was not required, as an accommodation, to place Fahey in an assembler position if he had only applied for the parts expediter position. 29 C.F.R. § 1630 ("Reassignment is not available to applicants."). But Fahey did not limit his employment application to the parts expediter position; he applied for any production worker position. Twin City Fan made the decision that the parts expediter position was the best fit for Fahey. Thus, being placed in an assembler position was not a "reassignment" under the ADA.

The issue surrounding the assembler position becomes clear when looked at, not as a reasonable accommodation claim, but as a disparate treatment claim. At the heart of any ADA claim is discrimination—treating a person differently based on the illegitimate criterion that he is disabled. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and

17

privileges of employment."). So the question is: Did Twin City Fan treat Fahey differently, and if so, was his disability a motivating factor for doing so?

Twin City Fan's standard practice is to keep employment applications for one year when it is unable to place a qualified applicant in an available position. Positions become available quickly because the plant has a high turnover rate, somewhere between 47 and 50 percent per year. When a position becomes available, Twin City Fan notifies the applicants on file who Twin City Fan believes would be able to fill the open position.

Assembler positions have particularly high turnover rates, assumedly higher than the rate for the entire plant. There are either nineteen or twenty assembler positions in the day shift at a given time. At the time of the trial, Twin City Fan had four open day-shift assembler positions.

Although its standard practice is to keep applications for a year and to notify applicants when positions become available, Twin City Fan did not do this for Fahey. Instead, Twin City Fan rescinded Fahey's job offer because of his disability and assumed he would no longer want to work at Twin City Fan. Simply put, Twin City Fan treated Fahey differently than it treats other applicants. This conduct constitutes another adverse employment action under the ADA. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures[.]").

### D.  Motivating Factor—Nondiscriminatory Reason

Twin City Fan does not dispute that it rescinded Fahey's job offer because of his disability. And aside from its direct threat argument, which it failed to prove, Twin City Fan offered no other nondiscriminatory reason for its decision. Therefore, Fahey satisfies this element of his disparate treatment claim.

With respect to the claim based on Twin City Fan's divergence from its standard hiring practices, Twin City Fan's only nondiscriminatory reason offered was that it assumed Fahey would not want to work at Twin City Fan. Fahey's actions show otherwise. For example, he applied for any production worker position. There was no evidence that Fahey dismissed the notion of working in an assembler position. Even when initially told that his job offer was rescinded, Fahey feverishly fought to have Steffes reconsider her decision. Fahey clearly wanted a job at Twin City Fan.

In sum, Fahey established the elements of his disparate treatment claim. Twin City Fan did not prove its affirmative defense, namely the defense of direct threat, that would have shielded it from liability. Therefore, the court finds in favor of Fahey on his disparate treatment claim.

## II.   Reasonable Accommodation

Fahey also brought forth a reasonable accommodation claim against Twin City Fan. Under the ADA and its regulations, discrimination occurs if "a covered entity does not make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a

disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (citing 29 C.F.R. 1630.9(a)). The typical elements, which Fahey would be required to prove, of an ADA reasonable accommodation claim are: (1) that the applicant was a disabled person within the meaning of the ADA, (2) that the employer knew of the applicant's disability, (3) that the applicant was qualified to perform the essential functions of the position sought if he had been provided with reasonable accommodation, and (4) the employer failed to provide reasonable accommodation. *See* Eighth Circuit Manual of Model Jury Instructions–Civil, Instruction 9.42 (2013).

As discussed above, Fahey proved he was a disabled person within the meaning of the ADA. Also, there is no dispute that Twin City Fan knew of Fahey's disability; Dr. Edinger brought it to Twin City Fan's attention in her post-offer physical summary report. It is also evident that Twin City Fan did not accommodate Fahey in any way. Accordingly, the only issue that remains is whether Fahey was qualified to perform the essential functions of the position sought if he had been provided with reasonable accommodation.[11]

---

[11] Whether Fahey was qualified to perform the essential job functions under a reasonable accommodation claim requires the same analysis as the test for a "qualified individual" under a disparate treatment claim. Fahey must (1) possess the requisite skill, education, experience, and training for the position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.

The parts expediter position is the only position at issue in this analysis because there was not a vacant assembler position at the time Fahey applied at Twin City Fan. *See Cravens*, 214 F.3d at 1019 (noting that an employer is not required to create a new position or to "bump" another employee in order to accommodate a disabled person). The court found in its earlier analysis that Fahey met his burden in proving he was qualified to perform the essential functions of the parts expediter position even without an accommodation. The court further found that Twin City Fan failed to meet its burden in proving Fahey posed a direct threat to himself and to the health and safety of others. Based on these two findings, the court found Fahey established that he was qualified to perform the essential functions of the parts expediter position. If these findings were in error, the court will alternatively consider Fahey's reasonable accommodation claim.

For purposes of his reasonable accommodation claim, the court now assumes Fahey was <u>not</u> qualified to perform the essential functions of the parts expediter position without an accommodation. Operating under this assumption, Fahey must show that a reasonable accommodation would allow him to perform the essential functions of the parts expediter position. Fahey "must only make a facial showing that a reasonable accommodation is *possible*." *Fenney*, 327 F.3d at 712. If he makes this facial showing, the burden of production then shifts to Twin City Fan to show such accommodation is either unreasonable or that Fahey would still be unable to perform the essential

21

functions of the job even with the accommodation.[12] *Id.* If Twin City Fan shows that Fahey could not perform the essential functions of the job even with reasonable accommodation, then Fahey must rebut that showing with evidence of his individual capabilities. *Id.*

Fahey's limited peripheral vision is the reason Twin City Fan contends he was unqualified to perform the essential functions of the parts expediter position, namely the function of operating a forklift. One accommodation proposed by Fahey was to place a mirror on the forklift to help improve his peripheral vision, much like his requirement to have a side mirror on his car when he drives. The court finds this proposed accommodation is at least possible.

Twin City Fan did not address this possible accommodation at the time it rescinded its offer, during Dr. Edinger's after-the-fact deposition, or during trial. In other words, Twin City Fan did not produce any evidence that Fahey was still unable to operate a forklift in a safe manner after a mirror was placed on it.[13]

Perhaps a larger problem, from the court's viewpoint, is Twin City Fan's failure to engage in any sort of interactive process before it decided to rescind

---

[12] Because Twin City Fan's position is that Fahey's lack of vision in his right eye makes him unqualified for safety reasons (i.e., direct threat defense), the burden of persuasion may also shift to Twin City Fan to prove Fahey is still not qualified with an accommodation. When alleging the direct threat defense, the employer "bears the burden of proof, as the direct threat defense is an affirmative defense." *Wal-Mart Stores, Inc.*, 477 F.3d at 571.

[13] The direct threat analysis above is equally as applicable here. Twin City Fan simply failed to meet its burden.

the job offer. *See E.E.O.C. v. Convergys Customer Mgmt. Group, Inc.*, 491 F.3d 790, 795 (8th Cir. 2007) ("Once the employer is made aware of the legitimate need for an accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.") (internal citations omitted). There is a complete lack of evidence that Twin City Fan made any good faith effort to accommodate Fahey. Steffes testified that she made the determination that Fahey could not be accommodated after discussions with internal employees. Steffes made this determination, however, without any information—from Dr. Edinger or from any medical or other relevant literature—about Fahey's specific limitations or how those limitations would affect his ability to perform the parts expediter position.[14] Nor did Steffes discuss Fahey's limitations with Fahey. Steffes's decision that Fahey could not be accommodated, therefore, necessarily was based on stereotypes, generalizations, and prejudices. As this court noted in its summary judgment order, this is the type of decision-making that the ADA seeks to avoid by requiring the employer to engage in an interactive process, involving both the employer and applicant, in order to make an individualized assessment as to whether an accommodation can be made. Docket 38 at 16-17.

---

[14] Even in Dr. Edinger's after-the-fact deposition, Dr. Edinger failed to link Fahey's specific impairments to the essential functions of the job. For example, she stated that an individual should have 70 degree peripheral vision if he is going to operate a forklift. To put that number into context, Dr. Edinger stated that 85 degree peripheral vision is optimal. She did not, however, indicate what Fahey's peripheral vision is.

Moreover, the interactive process is meant to provide a dialogue between the employer and applicant to determine what, if any, accommodations are possible. This is because the applicant will have better access to information concerning his limitations and ability "whereas an employer will typically have better access to information regarding possible alternative duties or positions," or other accommodations that may be available to the disabled applicant. *Convergys Customer Mgmt. Group, Inc.*, 491 F.3d at 795. In other words, it is best if the determination of whether an accommodation allows a disabled individual to perform essential job functions is made in the workplace, not in the courtroom. But where, as here, an employer completely isolates a disabled individual from the conversation, the courtroom may very well be the disabled individual's last resort.

The court is mindful that failing to engage in the interactive process does not create per se liability. *Kallail v. Alliant Energy Corp. Serv., Inc.*, 691 F.3d 925, 933 (8th Cir. 2012). But when a plaintiff brings forth a legitimate proposed accommodation, one which in all likelihood would have been entertained during the interactive process, the employer's failure to engage in the interactive process is strong evidence that it failed to fulfill its affirmative duty to reasonably accommodate a disabled individual's limitations. *See Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004) (discussing the rationale behind a reasonable accommodation claim and noting that "discrimination occurs when the employer fails to abide by a legally imposed duty").

24

For all of the reasons discussed above, the court finds Fahey also succeeded on his reasonable accommodation claim. Because the court found in favor of Fahey with respect to his ADA claims, the court also finds in favor of Fahey with respect to his state-law claim under SDCL 20-13-10.

## III.  Damages

Fahey seeks $200,000 in compensatory damages and $200,000 in punitive damages. The court address each in turn.[15]

### A.  Compensatory Damages

In awarding compensatory damages, the court attempts to determine the amount of money which "will fairly and justly compensate the plaintiff for any damages . . . sustained as a direct result of" Twin City Fan's rescission of its job offer. Eighth Circuit Manual of Model Jury Instructions–Civil, Instruction 9.70 (2013). The court considers: (1) the amount of any wages and fringe benefits Fahey would have earned in his employment with Twin City Fan, minus the amount of earnings and benefits that he received from other employment; (2) the amount of any other damages sustained by Fahey; and (3) any failure of Fahey to mitigate his damages. *Id.*

---

[15] Twin City Fan did not put on any evidence to suggest that it would have made the same decision to rescind the offer absent Fahey's disability. Therefore, Twin City Fan cannot avoid an award of damages using this theory. Also, the court already found that Twin City Fan did not, in good faith, attempt to accommodate Fahey. Thus, the "good faith" defense to damages is not applicable either.

Starting with any wages and fringe benefits Fahey lost because of Twin City Fan's actions, Fahey introduced expert evidence from an economist, Ralph Brown, Ph.D. Brown determined Fahey's past economic losses amounted to $36,396. In coming to this figure, Brown compared what Fahey would have made at Twin City Fan, assuming 10 hours of overtime per week, and what Fahey made (and would have made had he worked for the entire period of time) at LifeQuest.[16] Brown did not take into account, however, the fact that Fahey worked part time, roughly 10 hours per week, at Riverfront Broadcasting while working at LifeQuest.

Steffes testified during the trial that a parts expediter cannot expect to get 10 hours per week of overtime consistently. She stated that the need for overtime varies on a range from 0 hours to 10 hours. Finding this testimony credible, it is necessary to alter the amount of damages Brown calculated due to the expected overtime. Under Brown's calculations, the total amount Fahey would have received from overtime was $8,220 (500 hours multiplied by $16.44). The court finds a more appropriate number, based on the evidence presented during trial, is $5,754 (350 hours multiplied by $16.44). This reduces Brown's calculation by $2,466.

---

[16] This comparison generally applied the proper formula for determining lost wages and fringe benefits: what Fahey would have made, minus what he did make.

The court finds that the remaining assumptions and calculations made by Brown for Fahey's past economic damages are reasonable. Therefore, the court awards Fahey $33,930 for the loss of wages and fringe benefits.

The court next considers other damages alleged by Fahey, namely front pay and emotional damages. "Front pay is a disfavored remedy that may be awarded in lieu of reinstatement[.]" *Sellers v. Mineta*, 358 F.3d 1058, 1063 (8th Cir. 2004). The court considers several factors in determining whether to award front pay and how much to award. *Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1013 (N.D. Iowa 1998). The factors the court finds most relevant here are: the duration of past employment; the length of time the employee was employed by the employer; and the likelihood the employee would have continued to be employed by the employer. First, Fahey did not have a steady work history in the months leading up to his application to Twin City Fan. Second, Fahey was never employed by Twin City Fan; rather, he was only an applicant. And third, and most persuasive, Twin City Fan has a turnover rate somewhere between 47 and 50 percent per year. Based on these facts, the court finds any award of front pay here would be too speculative.

The court now turns to emotional damages. Fahey stated that he was devastated when Twin City Fan rescinded his offer. He said that Twin City Fan's decision really took a toll on his emotional well-being because he was being told he was incapable of doing what he considered to be a rather simple job. He did not, however, seek counseling or any other assistance to deal with any emotional pain he suffered. Based on the nature and facts of this case and

27

Fahey's testimony about the emotional damage caused, the court finds an award of $25,000 for emotional damages is appropriate.

Based on the evidence presented at trial, the court finds an award of $58,930 for compensatory damages was proved by Fahey. Fahey is also entitled to prejudgment interest on the back pay. Both parties should submit their calculation of and their method of calculating the prejudgment interest by January 21, 2014.

### B. Punitive Damages

"A plaintiff is entitled to punitive damages in connection with ADA claims where the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1096 (8th Cir. 2007) (internal quotations omitted). "An employer acts with malice or with reckless indifference if it has knowledge that it may be acting in violation of federal law." *Id.* (internal quotations omitted). "An award of punitive damages is inappropriate . . . when the employer (1) is unaware federal law prohibits the relevant conduct, (2) believes the discriminatory behavior is lawful, or (3) reasonably believes there is a bona fide occupational qualification defense for the discriminatory conduct." *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 903 (8th Cir. 2006).

At all times, Twin City Fan maintained that Fahey's disability would cause a safety risk to Fahey and to other employees at the plant. While its safety concerns were not grounded on legally permissible grounds, Twin City Fan believed their concerns to be lawful and such beliefs were not malicious or

28

reckless. Therefore, although Twin City Fan's actions were not enough to escape liability under the ADA, they do not constitute the type of malicious intent or reckless indifference required to support an award of punitive damages.

## CONCLUSION

The court conducted a court trial on plaintiff's ADA and state-law claims. After hearing all of the evidence, the court finds that Fahey established his claims for disparate treatment and reasonable accommodation under the ADA as well as his claim under SDCL 20-13-10. Fahey also established that he is entitled to a compensatory damages award of $58,930. Punitive damages are not appropriate under the facts of this case. Accordingly, it is

ORDERED that judgment will be entered in favor of plaintiff, Gordon Fahey, and against defendant, Twin City Fan Companies, LTD., in accordance with this memorandum opinion and order.

IT IS FURTHER ORDERED that both parties are to submit their calculation of and their method of calculating the prejudgment interest by **January 21, 2014.**

Dated January 13, 2014.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE